**GRAMEX CORPORATION, a Missouri Corporation, and Homart Development Co., a Delaware Corporation, Appellants,**

v.

**LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT, and Other Officials and Members of The Lexington–Fayette Urban County Government, The Urban County Council, and Urban County Planning Commission, as Listed on the Notice of Appeal, Appellees.**

No. 96–CA–1879–MR.

Court of Appeals of Kentucky.

March 6, 1998.

Discretionary Review Denied
by Supreme Court Aug. 26, 1998.

J. Montjoy Trimble, Kara K. Clements, Lexington, for Appellants.

Chris Westover, Lexington, for Appellees.

Before BUCKINGHAM, GARDNER and SCHRODER, JJ.

## OPINION

BUCKINGHAM, Judge.

Gramex Corporation and Homart Development Co. (hereinafter referred to collectively as Gramex) appeal from an opinion and order of the Fayette Circuit Court which affirmed a decision of the Lexington–Fayette Urban County Council (the Council) denying Gramex's request for a zone change for a piece of property in Lexington. The Council's decision was in accord with the recommendation of the Lexington–Fayette Urban County Planning Commission (the Commission). For the reasons set forth hereinafter, we affirm.

The property consists of 18.426 acres of land located on Nicholasville Road in Lexington which is currently zoned R–3 (low density apartments) and R–4 (high density apartments). Gramex sought to have the property rezoned as B–3 (highway service business) in order to develop a shopping center on it. The 1988 comprehensive plan for the Lexington–Fayette County area recommended that this land be zoned for medium and high density residential use.

The property is bordered on the west by Nicholasville Road, on the north and east by single-family residences, and on the south by an apartment complex. Nicholasville Road is a very busy multi-lane street, and several businesses and shopping centers, including Fayette Mall and several automobile dealerships, are located on the west side of Nicholasville Road. This is in accordance with the comprehensive plan, which provides that this area of Nicholasville Road be zoned for business and commercial use on the west side and for residential use on the east side.

A great deal of evidence was presented to the Council during its public hearing on the proposed rezoning. Fayette County staff workers presented the Council with evidence concerning the appropriateness of the current zoning status of the property, including a housing market analysis which demonstrated that 5,000 new rental households would be added to the Lexington area by 1997. The Council was also informed that no zoning changes similar to Gramex's had been granted since the adoption of the 1988 comprehensive plan, although several such changes had been previously allowed. There was also testimony that the proposed shopping center would have an adverse effect on the traffic on Nicholasville Road, and several neighboring residents also testified in opposition to the requested zoning change.

Gramex presented evidence in support of its request, including evidence of the types of stores which would locate in the shopping center, a traffic study showing Gramex's projections concerning the effect on traffic that the shopping center would have, and testimony that there is no demand for apartments in the area. The Council voted eleven to two to deny Gramex's request, and Gramex then appealed to the Fayette Circuit Court. The circuit court affirmed the decision of the Council, and this appeal followed.

Kentucky Revised Statute (KRS) 100.213, the statute governing zone changes, provides in relevant part that

(1) Before any map amendment is granted, the planning commission or the legislative body or fiscal court must find that the map amendment is in agreement with the adopted comprehensive plan, or, in the absence of such a finding, that one (1) or more of the following apply and such finding shall be recorded in the minutes and

records of the planning commission or the legislative body or fiscal court:

    (a) That the existing zoning classification given to the property is inappropriate and that the proposed zoning classification is appropriate;

    (b) That there have been major changes of an economic, physical, or social nature within the area involved which were not anticipated in the adopted comprehensive plan and which have substantially altered the basic character of such area.

There is no question that Gramex's proposed zoning change is not in agreement with the comprehensive plan. Therefore, in order for the proposed zoning change to be successful, it must be found that the existing zoning for the property is "inappropriate" and that the amended zoning classification would be "appropriate" or that major "economic, physical, or social" changes have occurred in the area which have "substantially altered the basic character" of the area. Gramex contends that it has met both criteria.

"[W]hen the legislative decision is simply a refusal to rezone, the problem becomes whether or not the evidence shows a compelling need for the rezoning sought or clearly demonstrates that the existing zoning classification is no longer appropriate." *City of Louisville v. McDonald*, Ky., 470 S.W.2d 173, 179 (1971). Whether there is a "compelling need" will be determined by the circumstances of the case. *Bryan v. Salmon Corp.*, Ky.App., 554 S.W.2d 912, 917 (1977).

■   Gramex first argues that there is a compelling need for the rezoning, due to the great demand by retail businesses for more space in the area immediately surrounding the property. Even if such a demand exists, however, it would not necessarily create a "compelling need" for rezoning or clearly demonstrate that the current zoning is no longer appropriate. There could also be a similar demand for more residential housing in the area, which is what the Council found. Furthermore, the fact that Gramex would be able to make a larger profit if the land is rezoned for commercial use is also insufficient to mandate a zoning change, as it has long been held that "the mere fact that a commercial use may be more profitable than

a residential use of their [landowners'] property, is not sufficient evidence of an unwarranted hardship on appellants." *Schloemer v. City of Louisville*, 298 Ky. 286, 289, 182 S.W.2d 782 (1944).

■   Gramex next argues that the recent expansion of the Fayette Mall (located across Nicholasville Road from the Gramex property) constitutes a major change in the area which would allow a rezoning of the Gramex property pursuant to KRS 100.213(1)(b). Gramex contends that this expansion caused the Nicholasville Road area to become a "regional shopping destination" which affected both sides of Nicholasville Road. The expansion of the Fayette Mall resulted from a zoning change from one nonresidential use (professional office) to another nonresidential use (planned shopping center). While the Fayette Mall zoning change was not in a residential area, the B–3 zoning classification sought by Gramex is not only in a residentially-zoned area but is a more intensive retail zoning category than Fayette Mall's zoning classification. We find no error in the determination that the basic character of the area has not been altered by the Fayette Mall expansion and that there is no compelling need for the proposed rezoning.

■   Gramex also contends that the property is not suitable or appropriate for residential development in that there is no demand for residential housing in the area and, therefore, it is "economically impossible to develop the property." (Appellants' Brief, at 21.) We cannot say that the Council acted arbitrarily or that the existing zoning classification of the property is "inappropriate" and that the proposed amended zoning classification is "appropriate" in light of the desire of the comprehensive plan to use Nicholasville Road to separate a commercial area from a residential area. We believe that the use of Nicholasville Road to separate the two areas is appropriate and certainly is not arbitrary.

Gramex's final argument is that the 1988 comprehensive plan has not been updated in accordance with KRS 100.197 and that the Council's reliance on it is arbitrary. KRS 100.197(1) provides in relevant part:

The comprehensive plan elements, and their research basis, shall be reviewed from time to time in light of social, economic, technical, and physical advancements or changes. At least once every five (5) years, the commission shall amend or readopt the plan elements. It shall not be necessary to conduct a comprehensive review of the research done at the time of the original adoption pursuant to KRS 100.191, when the commission finds that the original research is still valid.

Gramex argues that the 1988 plan is invalid because it was based upon data collected in 1978 for a prior (1980) comprehensive plan. Gramex then points to several predictions in the 1978 report which have proven to be erroneous, such as population projections and total annual retail sales in the Lexington area.

■ KRS 100.197 gives the planning commission the discretion to rely on economic data prepared for a previous comprehensive plan if it finds that the data is "still valid." Assuming that Gramex is correct that no new comprehensive economic research was conducted for the 1988 comprehensive plan,[1] such a lack of research would not invalidate the report. Furthermore, simply because the 1978 report may have been somewhat off-base in a few areas does not mean that the entire report was so deficient as to no longer be valid. Numerous other areas of the report may have been totally correct.

■ Furthermore, the statute itself provides an exclusive remedy for a landowner aggrieved by the planning commission's alleged failure to conduct the mandatory five-year review. See KRS 100.197(2). Since Gramex did not file suit in accordance with that statutory provision, it may not now seek to have the 1988 comprehensive plan declared deficient.

In short, the Council in this case was presented with conflicting evidence on various issues, including the demand for residential housing, the proposed shopping center's impact on traffic, and the effect of the Fay-ette Mall expansion. The effect of this conflicting evidence on us is best summarized as follows:

The authorities upon whom the duty to zone and rezone is imposed could have been reasonably persuaded by the evidence in support of the zone change, but they were not. In view of the contradictory relevant evidence, it is our view that in this case a reviewing court cannot properly say that the evidence . . . was so conclusive and compelling concerning the need for the change in classification or the appropriateness of the existing zoning that the decision of the legislative body can be declared arbitrary.

*City of Bowling Green v. Hunt,* Ky., 516 S.W.2d 647, 648 (1974).

The opinion and order of the Fayette Circuit Court affirming the decision of the Council which denied Gramex's request for a zoning classification change is affirmed.

All concur.

---

1. Dale Thomas, the director of planning, testified that the 1978 physical analysis was updated by Mark Guindon for the 1988 comprehensive plan.