ARROW TRANSPORTATION COMPANY
and Gulf Refining Company, Appellants,

v.

PLANNING AND ZONING COMMISSION
OF the CITY OF PADUCAH AND MU-
NICIPAL AREA, McCRACKEN COUN-
TY, Kentucky, and W. Prewitt Lackey, T.
A. Bradley, Claude N. Baker, James Sable,
R. C. Morrow and Lloyd C. Emery, Mem-
bers of Such Commission, Appellees.

Court of Appeals of Kentucky.

Dec. 14, 1956.

As Modified on Denial of Rehearing
March 15, 1957.

Waller, Threlkeld, Whitlow & Byrd,
Goheen, Schultz & Shelbourne, Paducah,
for appellants.

Earle T. Shoup, Paducah, for appellees.

WADDILL, Commissioner.

This appeal is from a judgment vacating an order of the Board of Adjustment of the City of Paducah wherein the Board granted a variance permit bestowing upon a property owner a special privilege in the nature of a nonconforming use.

In April, 1952, the Board of Commissioners of the City of Paducah adopted a comprehensive zoning ordinance. This action was pursuant to a recommendation contained in a final report of the Planning and Zoning Commission of the City of Paducah and McCracken County. Under the terms of the zoning ordinance the portion of the property situated between Meyers Street and the floodwall is in a B–3, or General Business Zone, which zone extends from Clements Street on the south to a point beyond Broad Street on the north and then continues along Third Street for an additional block or so. The portion of the property in this area situated east of the floodwall is in an M–2, or Heavy Industrial Zone.

The property in controversy is owned by Arrow Transportation Company, and it fronts about 365 feet on Meyers Street and extends to the west bank of the Tennessee River. This tract is divided by the Paducah floodwall, approximately one fourth of it lying between Meyers Street and the floodwall and about three fourths of it lying between the floodwall and the river. The action of the Board of Adjustment appealed from affects only that part of the property located in the B–3 zone. This particular tract is approximately in the middle of the B–3 zone, and is bounded on the west by Meyers Street, on the north by property owned by the City of Paducah adjacent to Island Creek, on the south by some privately owned property and on the east by the floodwall.

The entire property was leased to Gulf Refining Company in the year 1954 with an option to purchase. The record indicates that Gulf intends to utilize the property for construction purposes, provided it can erect

gasoline and petroleum storage facilities on the property located in the B–3 zone. Such use is not permitted on this tract as presently zoned.

In December, 1953, Arrow filed an application with the Planning and Zoning Commission, seeking a rezoning of that portion of the property in the B–3 zone and to have substituted therefor an M–2 classification. Numerous property owners in the vicinity filed a petition in opposition to the change. After two hearings were held the Commission refused to rezone the property. In November, 1954, Arrow and Gulf filed a joint application with the Board of Adjustment, requesting a "special exception" or a "variance" from the provisions of the zoning ordinance, so as to allow the erection, installation and operation of a petroleum bulk plant and river terminal on the portion of the property in the B–3 zone. The Board granted the relief sought in this application on the theory that a literal enforcement of the zoning ordinance "in this instance would result in an unnecessary hardship on the applicants," and "the granting of the 'special exception' or 'variance' requested by them would not violate the spirit of said ordinance and would do substantial justice under all circumstances."

We have mentioned that this order was set aside by the circuit court on the ground that the Board acted in excess of its power. This appeal challenges the correctness of the lower court's ruling.

We believe the case at bar cannot be distinguished from the case of Bray v. Beyer, 292 Ky. 162, 166 S.W.2d 290, 293. In that case Beyer and his wife, who owned property situated in the City of Paducah, applied to the building inspector for a permit to erect a house on a lot in territory which was zoned for residential purposes. A permit was issued and, soon after the construction of the building began, it became obvious that it was to be a gasoline filling station. Thereupon the property owners in the immediate vicinity protested. The Bey-

ers then applied to the Planning and Zoning Commission to have their property rezoned for residential and business purposes, but their request was denied. The Beyers nevertheless proceeded with the construction of the filling station and this caused the city to bring suit to enjoin them from erecting a filling station or using the property for business purposes, and a temporary injunction was granted. The Beyers then made application to the Board of Adjustment for a rule exempting their lot from the restrictions of the zoning ordinance. After a hearing the Board granted the Beyers a permit to construct the filling station on the theory that the strict enforcement of the zoning law would result in an unnecessary hardship on the Beyers. When that case reached this Court, the judgment approving the action of the Board was reversed and in the course of the opinion it was said:

"* * * the power of authorizing special exceptions to and variations from the general provisions of the zoning law is designed to be exercised only under exceptional circumstances and not for the purpose of amending the law or changing its scheme in essential particulars *such as making changes in boundary lines of districts or authorizing the erection of a building forbidden by the zoning law to be erected.* [Emphasis ours.]

"We think the action of the Board of Adjustment in the instant case violated the spirit of the ordinance and amounted to legislation by it. * * *."

In the instant case the Board of Adjustment in effect authorized Gulf to erect on property located in a B–3 zone tanks for the storage of gasoline and petroleum products. Since such facilities may be constructed only in an M–2 zone, it is apparent the Board assumed authority it did not possess, that is, it granted an application which, if allowed, would in effect change the property from a B–3 zone to an M–2 zone. The ex-

ercise of such power upon the part of the Board is expressly forbidden by this language in the Beyer case:

"The power to zone property within the city belongs to the legislative department of the city, and that power has not been and cannot be delegated to the Board of Adjustment of the Planning & Zoning Commission, yet if the Board of Adjustment may grant special exceptions or authorize variances, such as the one in the present case, it may eventually destroy the restrictions imposed by the zoning ordinance and, in effect, amend or repeal the ordinance."

The Board attempted to justify its allowance of the application on the ground that a denial would "result in unnecessary hardship on the applicants." It is difficult to understand how Gulf could suffer a hardship in the restriction on the use of a property it does not yet own. As a matter of fact, Gulf's lease of the property and its option to purchase were not acquired until after the enactment of the zoning ordinance, so that it was on notice from the outset that the property was not available for use as a gasoline and petroleum storage facility and that situation prevailed for over a year prior to the time it even became interested in the property. In Gleason v. Keswick Improvement Association, Inc., 197 Md. 46, 78 A.2d 164, 166, the universally recognized rule as to granting a special advantage to one who purchases property in the face of an existing restriction binding it is set forth as follows:

"'Where a person purchases property with the intention to apply to the board of appeals for a variance from the restrictions imposed by the ordinance he cannot contend that such restrictions cause him such a peculiar hardship that entitles him to the special privileges which he seeks.'"

In the light of what we have stated, we conclude the circuit court correctly determined the issue presented by this appeal.

Wherefore, the judgment is affirmed.

SIMS, Judge (dissenting).

I cannot agree with the majority opinion and will give my reasons in this dissent.

The first error of the majority is they say the variance granted by the Board of Adjustment amounts to a rezoning, hence the Board was legislating. The statute, KRS 100.470, authorizes the Board to decide appeals and applications for special exceptions where a literal enforcement of the zoning regulations would result in unnecessary hardship. The majority opinion in denying the right of the Board to make this variance emasculates this statute, as well as others relating to the powers of the Board, and leaves it with no authority. In effect the opinion abolishes the Board.

The powers of the Board are to be found in the statutes, and the city cannot limit those powers or impose restrictions or conditions on their exercise. Rathkopf, The Law of Zoning and Planning, Vol. 1, page 609. Whatever may be the terms of an ordinance or regulation of the Commission in respect to the power of the Board, they must yield to the terms of the enabling statute where there is conflict. City of Somerset v. Weise, Ky., 263 S.W.2d 921. It is a simple and elementary principle that an ordinance cannot forbid what a statute expressly permits or authorizes. City of Ashland v. Ashland Supply Co., 225 Ky. 123, 7 S.W.2d 833; City of Harlan v. Scott, 290 Ky. 585, 162 S.W.2d 8.

In the exercise of these powers, the Board may "reverse, affirm or modify an order, decision or determination of an administrative official." KRS 100.470(2, 3). Its decision or order is made conclusive as to all questions of fact, where there is substantial evidence to support it. KRS 100.480. We held in Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782, that courts will not disturb decisions of the Board in granting a variance unless it acted arbitrarily. In Fried v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 258 S.W.2d 466, it was said that a court will not substitute its judgment for that of the

zoning authority when the decision is based upon reason and logic. True, the Fried opinion was questioned in Louisville and Jefferson County Planning and Zoning Commission v. Grady, Ky., 273 S.W.2d 563, but not on the point now under discussion.

These statutes clearly and explicitly define the powers of the Board of Adjustment and, as indicated above, any attempt to limit them or restrict their reasonable exercise by an ordinance or regulation of the zoning commission is without effect. As stated in Rathkopf, The Law of Zoning and Planning, Vol. 1, page 667, "The purpose of the powers granted to the Board of Appeals is to provide a way of flexibility in the administration of zoning ordinances, to permit a variance when the enforcement of the law would be to create unnecessary hardship. The jurisdiction of the board to exercise the corrective powers conferred upon it by statute, indispensable to the statutory purpose, is, of course, not limited or modified by the failure of the ordinance to include a similar flexible provision, conferring powers upon the Board of Appeals similar to that contained in the village, city or town law." Yokley, Zoning Law and Practice, § 129 et seq., and 58 Am.Jur., Zoning, §§ 196, 198, are to the same effect. See also 168 A.L.R. 102 et seq.

In the case before us we have a single city lot in the midst of industry with the rear three-fourths portion thereof zoned for heavy industry, while the front one-fourth is zoned for general business. This is the only instance that I can recall where a single city lot has been put into two different zones. It is apparent this works a great hardship on the owner of the lot and the Board was acting clearly within the power given it by statute to grant a variance so that the owner may construct oil storage tanks on the front quarter of the lot similar to those now on the rear three quarters of the lot.

The majority rest their decision on Bray v. Beyer, 292 Ky. 162, 166 S.W.2d 290. As I read the Beyer opinion, the facts there are quite different from those here. Beyer asked the Board to exempt his lot from the restrictions of the zoning ordinance while here the property owner only asked for a variance allowing a use of the front one-fourth of the lot which was permitted on the rear three-fourths of it. Beyer asked for a rezoning of his property and when his application was refused, he erected a filling station thereon and the Board entered an order exempting his property from the restrictions of the zoning ordinance. We rightfully held this amounted to legislation by the Board. No specific variance was sought by Beyer on the ground that a literal enforcement of the zoning ordinance would result in an unnecessary hardship on him. In the case at bar the property owner sought a variance on the ground of unnecessary hardship, and the Board specifically found on the evidence adduced that a literal compliance with the zoning ordinance would work such hardship. Under the Schloemer and Fried opinions neither the circuit court nor this court should disturb the Board's decision.

The majority opinion again falls into error, in my judgment, when it says "it is difficult to understand how Gulf could suffer a hardship in the restriction on the use of a property it does not yet own." The hardship is not on Gulf for it will refuse to purchase the property unless the variance is granted. The hardship is on the present owner which has practically a worthless piece of property if the variance is not granted to enable it to put the front one-fourth of the lot to the same use the zoning commission allowed the owner to make of the rear three-fourths of the lot.

For the reasons given, I most respectfully dissent.